ALITO, Circuit Judge,
dissenting.
I dissent for two reasons. First, I cannot agree with the majority that the district court committed clear error when it credited Igbonwa’s testimony that he was promised that the United States would “take steps to prevent” his deportation to Nigeria. See App. 650a. Second, without clarification from the district court regarding the precise nature of its finding, I am unwilling to conclude that the Assistant United States Attorney in question lacked the authority to make the promise that the district court found was made. Specifically, if, as the government *445 itself suggests (see Govt. Br. at 36 n.18), the Assistant United States Attorney merely promised that his office would make its best effort to prevent Igbonwa’s deportation, it is by no means clear to me that the Assistant United States Attorney exceeded his authority in making the promise that he did.
1. Before addressing these questions, however, I will briefly discuss what the government characterizes as a threshold jurisdictional argument, i.e., that section 306(g) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”), Pub.L. No. 104-208, Div. C. Title III, § 306(g), 110 Stat. 3009, codified as 8 U.S.C. § 1252(g), retroactively divested the district court of jurisdiction and therefore requires reversal here. Section 306(g) provides:
Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate eases, or execute removal orders against any alien under this chapter.
8 U.S.C. § 1252(g)(emphasis added). Section 306(c) of the IIRIRA states that section 306(g) “shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under the Act” (emphasis added).
These provisions might assist the government were it not for the fact that the district court’s final order was signed on August 26, 1996, more than a month before the IIRIRA was enacted on September 30, 1996.[1] Both of the statutory provisions quoted above used the future tense (“shall have” and “shall apply”). Thus, they at most affect the jurisdiction of the courts beginning the moment after the IIRIRA became law. Consequently, the statutory language does not support — on the contrary, it undermines — the government’s contention that the IIRIRA retroactively divested the district court of jurisdiction over a proceeding that was already completed at the district court level.
The government contends that the IIRIRA prospectively divested us of jurisdiction to hear this appeal. See Reply Br. at 8 (“this Court has no jurisdiction over this case”). However, merely showing that this court was prospectively divested of jurisdiction (as opposed to showing that the district court was retroactively divested of jurisdiction) would not help the government, since the government is the party that has appealed from and seeks reversal of the district court’s order directing the United States to “take steps” to prevent Igbonwa’s deportation to Nigeria. (In any event, the language of section 306(g) affects only appeals brought “by or on behalf of [an] alien.”).
Even if section 306(g) did not evidence a clear congressional intent not to divest the courts retroactively of jurisdiction over actions in which they had already entered final orders, the presumption of non-retroactivity leads to the same conclusion. See Landgraf v. USI Film Products, 511 U.S. 244, 293, 114 S.Ct. 1522, 1525, 128 L.Ed.2d 229 (1994) (Scalia, J., concurring in judgments) (“applying a jurisdiction-eliminating statute to undo past judicial action would be applying it retroactively”).[2]
2. I cannot agree with the majority that the district court committed clear error in finding that the prosecutor promised Igbon-wa that “the United States would take steps to prevent his deportation.” App. 650a. Ig-bonwa gave testimony to this effect, and the district court expressly found his testimony to be “credible.”[3] Id. In making this finding, the district court judge relied on the knowledge he had gained by virtue of his “six-year oversight of these proceedings,” id., which *446 included numerous opportunities to speak with and observe Igbonwa personally. There is no doubt that the printed record contains evidence that supports a contrary-finding, and if I had been the district court judge, I am not at all sure that I would have believed Igbonwa’s testimony. But I cannot say that the district court’s finding, which rests heavily on a credibility determination, was clearly erroneous.
3. While I accept the district court’s finding, I view it as ambiguous in a way that may have important legal implications. As noted, the district court found that “the United States [promised that it] would take steps to prevent [Igbonwa’s] deportation.” App. 650a (emphasis added). Similarly, the district court ordered the United States to “take steps to prevent the defendant’s deportation.” App. 661a (emphasis added).
One possible interpretation of the district court’s finding is that the United States promised to take whatever administrative steps were necessary to prevent Igbonwa’s deportation. If this is the correct interpretation, then we might be required to confront[4] the government’s arguments (a) that under 8 U.S.C. § 1105a(c), the district court was precluded from entertaining Igbonwa’s motion because he had not exhausted his administrative remedies and (b) that the Assistant United States Attorney who allegedly made the promise to Igbonwa lacked the authority to make a binding commitment regarding deportation.[5]
Another possible interpretation of the district court’s finding is that the Assistant United States Attorney simply promised that his office would make its best effort to persuade those having the decisionmaking authority that Igbonwa should not be deported to Nigeria. Under this interpretation, the Assistant United States Attorney’s promise would be similar to a promise to recommend a sentence to a sentencing judge who is then free to impose whatever lawful sentence the' judge finds appropriate. Under this interpretation, I am not at all sure that either of the legal arguments noted above would be implicated, and in any event, the issues might be significantly altered. Accordingly, before confronting those difficult issues, I would remand for the district court to clarify its finding.
For these reasons, I cannot join the decision of the majority, and must respectfully dissent.[6]

. The government also filed its notice of appeal (on September 24, 1996) prior to the enactment of the IIRIRA.

. The government itself quotes and relies on this very passage. See Govt. Br. at 22 n.12.

. In a nutshell, Igbonwa’s story is that he feared that his cooperation with the United States, in its prosecution of the members of a Nigerian drug ring, would put him in danger of "violent reprisal” should he ever have to return to Nigeria. Id. at 648-650. Given these fears, Igbonwa claims that he requested the United States government to grant him — in exchange for his cooperation — a promise that they would protect him from deportation to Nigeria.

. Igbonwa argues that we should not consider the government's legal arguments because they were not presented to the district court. I express no view at this time regarding this question.

. Igbonwa contends that, even if the Assistant United States Attorney lacked authority to make such a promise, an Immigration and Naturalization Service agent who attended one of the critical meetings with Igbonwa possessed such authority.

.The stakes here are high. If the district court was correct in finding Igbonwa credible, then the majority's reversal condemns him to a substantial risk of death resulting directly from his cooperation with the government. I reiterate, therefore, that I would not reverse the district court, but, instead, vacate its order and remand the case for clarification.